Ernest Colbert, a former tenant of defendant, Joseph H. Petty, brings this suit against Petty claiming that the latter charged him rent in excess of the maximum rate authorized under the provisions of the Federal Emergency Price Control Act of 1942, 50 U.S.C.A.Appendix, § 901 et seq., and that because of this and because of Petty's failure to comply with a certain order of the local Rent Director of the Office of Price Administration ordering him to refund the overcharge, he is liable for three times the amount of such overcharge and for interest and a reasonable attorney's fee. He brings his action under the provisions of Section 205(e) of the Federal statute known as the Price Control Act.
It is conceded that a lessor who attempts to charge a higher rate of rental than is fixed by the Rent Director or to violate any order or regulation, or who fails to register his property and to obtain the fixing of a ceiling rental rate, renders himself liable to a heavy penalty which, in the case of an overcharge in rent, is fixed at three times the amount of the overcharge together with interest and, a reasonable attorney's fee, subject, however, to the following provision: "* * * Provided, however, That such amount shall be the amount of the overcharge or overcharges *Page 558 
if the defendant proves that the violation of the regulation, order, or price schedule in question was neither willful nor the result of failure to take practicable precautions against the occurrence of the violation. * * *"
Defendant denies that he has failed or refused to comply with the order of the said Rent Director, maintaining that when the said order for refund was rendered the said Colbert was liable to him for unpaid rent in excess of the amount of the overcharge which was ordered refunded. By reconventional demand defendant claims from plaintiff a balance of $82.50 on rent alleged to be unpaid together with $121, which he avers is the cost of making repairs to the property which were rendered necessary by damage caused by plaintiff during his occupancy.
There was judgment below in favor of plaintiff for $336, representing three times the amount of the overcharge found to be unpaid and for an attorney's fee which was fixed at $100, and there was judgment in reconvention in favor of defendant, Petty, and against Colbert for $58.50, representing unpaid rent found to be due by Colbert.
Petty has appealed.
The facts are quite complicated. Petty was the owner of a newly completed house which Colbert agreed to rent. He went into possession on February 10, 1945. At that time Petty had not registered the housing unit with the Office of Rent Control of the Federal Office of Price Administration and had not obtained from that office the fixing of a ceiling rental rate.
Petty and Colbert agreed that, since it was probable that sometime would elapse before the house could be registered and the ceiling rental price fixed, Colbert would pay to Petty $8 per week and that when the ceiling price should ultimately be fixed, an adjustment would be made, Colbert to pay the additional rent, if the ceiling price should exceed the amount which he was paying, and Petty to refund to him such amounts as might be due if the ceiling price should be fixed at a figure lower than $8 per week.
Because of the loss of papers in connection with Petty's application to register the house with the Rent Director or because Petty failed to file those papers, there was considerable delay in the registration of the building and in the fixing of a ceiling price. But, finally on September 20, 1945, an order was rendered establishing the rental rate of $4.60 per week.
It is conceded that Colbert paid rent regularly at the rate of $8 per week from February 10, 1945 to May 19, 1945, but Petty contends that after May 19, 1945, on which day Colbert paid rent for the week ending May 26, 1945, no further rent was paid. Colbert, on the other hand, declares that he continued to pay rent regularly until September 20th, at which time the order fixing the rental rate at $4.50 per week was rendered.
The principal issue in the case is one of fact for if when the order was rendered fixing the rental rate Colbert had regularly, up to that time, paid rent at the rate of $8 per week, it is obvious that there was an overcharge of $112, which under the said order and under the agreement between the parties, Petty should have refunded to Colbert. If, on the other hand, as Petty contends, Colbert had ceased paying rent on May 19, 1945, then when the order was rendered on September 20, 1945, although Colbert had paid $3.50 per week too much, from February 10, 1945 to May 19, 1945, and had therefore, on May 19, 1945, accumulated a credit, his failure to pay rent at all from May 19, 1945 to September 20, 1945, had established a credit in favor of Petty which exceeded the overcharge due by Petty to Colbert. So that, as we have said, the sole question of fact which is involved is whether or not Colbert actually paid rent for those weeks between May 19, 1945 and September 20, 1945.
Colbert says that each week when he paid the rent, he demanded of Petty a receipt but that Petty always refused to give him one. However Petty maintains that he on each occasion on which rent was paid, made an entry in a book which he kept and that he made no entries for the weeks between May 19th and September 20th because no such payments were made. *Page 559 
Colbert produces as witnesses to prove that Petty refused to give him receipts two other persons, each of whom testified that at the request of Colbert, on one occasion, he had accompanied Colbert when rent was paid to Petty and that Petty had refused to give Colbert a receipt. One of these witnesses, Joseph Tate, was also a tenant of Petty. We are told that he has a similar suit pending at the present time against Petty and that he in that suit also contends that Petty refused to give him receipts, and we are asked to disregard the testimony of Tate because of his bias resulting from the pending suit which he now has against Petty.
[1] We have read the evidence submitted in connection with the question of whether or not rent was paid, and find it conflicting and confusing, but we have concluded that, since the trial court found in favor of Colbert and held that that rent was paid, the record does not justify a reversal of that finding since only a question of fact is presented.
[2] At that time it was very difficult indeed to find vacant property for housing purposes and it is therefore highly improbable that Colbert, who was regularly employed and whose income was quite substantial, would have taken any chance whatever on being ejected from the property for failure to pay rent because it was well known that while the Office of Price Administration was doing everything possible to prevent the ejectment of tenants, it was powerless to prevent an ejectment for nonpayment of rent. And we think that this fact lends color to his testimony that he did pay rent regularly. It is true that the burden is on him to prove that the rent was paid, but we think that in view of the fact that the judge a quo found in his favor, the record justifies the conclusion that he has successfully borne this burden.
It thus appears that when the order of the Office of Price Control was rendered fixing the rate and ordering the refund of such amounts as may have been collected in excess of that rate, there was an overcharge of $112. That order did not set forth the amount of the overcharge; in other words, it did not fix the overcharge at $112 but merely required that Petty refund within thirty days of the date of the order (September 20, 1945) such amount as might have been overcharged, and it further provided that if he did not do so within thirty days, he would be subjected "to a damage action in accordance with that section, 205(e), of the Emergency Price Control Act of 1942, as amended."
Petty did not make the refund within the thirty days and therefore made himself liable under the above referred to section of the act for three times the amount of the overcharge, interest and attorney's fees, unless he could show, as the act provides "that the violation of the regulation, order, or price schedule in question was neither willful nor the result of failure to take practicable precautions against the occurrence of the violation." On this point we are of the opinion that when we reached the conclusion that he was wrong in his contention that the rent had not been paid, we automatically also reached the conclusion that the violation of the order to refund must have been willful. In other words, there could be no error on his part on this question. He well knew whether or not the rent had been paid and therefore he well knew that if it had been paid, his failure to make the refund was willful. And since we held that the rent had been paid, we can reach no other conclusion than that Petty's failure to make the refund was willful and that therefore he is liable for three times the amount instead of the mere overcharge which would have been all that he would be liable for had the violation on his part not been willful.
[3] It is conceded by Colbert that he did not pay rent after the rendition of the order. Therefore before the order became effective, that is to say, within the thirty days within which the refund might have been made without penalty, Colbert became indebted to Petty for rent at $4.50 per week which accrued during those thirty days. Five payments became due in that period; therefore there was a total of $22.50 due by Colbert to Petty. Petty would have been within his rights in deducting from the $112 which he owed to *Page 560 
Colbert, the $22.50 which Colbert owed to him. This would have left due by Petty $89.50 instead of the $112 which was the amount of the original overcharge. Therefore, even though the overcharge was willful and even though the delay in registering the unit may also have been willful, Petty is liable only for three times $89.50, or $268.50 and not $336. After the refund was ordered, Colbert continued to live in the house without paying rent until he finally moved out on December 19, 1945, and he therefore owed to Petty the accrued rent between September 20, 1945 and December 19, 1945, which amounts to $58.50, the amount allowed by the District Court on the reconventional demand.
[4] The judgment below should have been for $268.50 in favor of Colbert. The amount allowed in reconvention, $58.50 was correct. A fee of $100 in so complicated a case as this is quite reasonable.
For these reasons the judgment appealed from is amended so as to read as follows:
"It is ordered, adjudged and decreed, that there be judgment in favor of the plaintiff, Ernest Colbert, and against the defendant, Joseph H. Petty, in the sum of Two Hundred Sixty-eight 50/100 ($268.50) Dollars, with legal interest thereon from date of judicial demand, until paid, plus attorneys' fees of One Hundred ($100.00) Dollars, and all costs.
"It is further ordered, adjudged and decreed that there be judgment on the reconventional demand in favor of plaintiff in reconvention, Joseph H. Petty, and against the defendant in reconvention, Ernest Colbert, in the sum of Fifty-eight 
50/100 ($58.50) Dollars."
Plaintiff to pay costs of appeal; defendant to pay all other costs.
Amended and affirmed.